Tilghman C. J.
Charles Hoffman deceased was a musician in the Pennsylvania line, in the army of the United States, and died in service in the month of September 1780, intestate and without issue. He left a widow named Rachel, to whom a patent was issued by the state of Pennsylvania 9th October 1786, for a tract of donation land “to hold to her, her heirs and assigns for ever, in trust for herself and the children of the said Charles Hoffman according to the laws of this commonwealth.” The wife of Nicholas Heyl is the niece and heir at law of Charles Hoffman. The defendant claims under a conveyance from Rachel, the daughter and heir of the said Rachel Hoffman (widow of Charles) by a former husband. The question is upon what trust did the widow Hoffman take the land by virtue of the said patent? The plaintiff’ contends, that it was in trust for the heirs of *87 her husband. The defendant says that the trust was for herself in fee simple. This will depend upon the intention of the legislature of Pennsylvania manifested in certain laws and resolutions.
On the 7th March 1780, the assembly having taken into consideration what quantity of lands should be allowed “to the officers and privates belonging to this state in the federal army,” ascertained the same by a resolution. On the 12th March 1783 an act was passed, the preamble of which recites, “that the general assembly did, by their resolve of 7th March 1780, promise to the officers and privates belonging to this state in the federal army, certain donations and quantities of land according to their several ranks as therein set forth, to be surveyed and divided off to them severally at the end of the war.” The seventh section directs that all officers and privates entitled as aforesaid, shall make application within two years after peace shall be declared, and should they die before application, their heirs, executors or administrators are permitted to apply within one year after the expiration of the said time, and in case of *their failure, it should be lawful for any person to apply to the land-office and take up such land. By the eighth section of this act all alienations made by the officers or privates, before the land is surveyed and laid off, are declared to be null and void. This was a wise and humane provision, but shows that the assembly did not consider the soldiers as having any vested interest, but that the whole was a donation, subject to be modelled at their pleasure. It may be proper to observe too, that the Indian title to the lands after-wards appropriated to these donations was not then extinguished. Hitherto it had not been exactly defiued, what officers and soldiers should be entitled to donation. Some had died in battle, or in the service; and some officers had been dismissed from the service, without any fault, and against their will, by various arrangements made by the congress of the United'States. All these persons were worthy of consideration, but seem to have been omitted in the act of 12th March 1783, which makes use of the general expressions “ officers and privates belonging to this state in the federal army.” At least their case was doubtful, as the words in their strict sense only apply to officers and privates then living and in service. On the 24th March 1785 an act passed appropriating land for the donations, and directing the manner in which it should be laid off and divided. The preamble recites the resolutions of 7th March 1780, and the act of 12th March 1782. The third section mentions that *88 difficulties may arise, “ in determining the cases to which the said grant of land may apply and by the fourth section on which this case turns, it is enacted as follows, “ all officers and soldiers of Pennsylvania regiments, or of independent corps acknowledged by this state as of the quota of Pennsylvania in the federal army, and officers being citizens of this state at the time of their entering into service, not attached to the line of any state, who have served therein to the end of the late war, and all officers as aforesaid who have been deranged by the regulations and arrangements of the army, by the act of congress of October 1780, or at any subsequent period of the war, together with the widows and children or either of them of such officers and soldiers as aforesaid as were slain in battle, or died in service, shall be, and they are hereby entitled *to land, according to the pay and rank they held last before they left the service, in the proportions laid down in the resolutions aforesaid.” The expressions “widows and children or either of them,” include three cases, 1. Where there were both a widow and children. 2. Children and no widow. 3. A widow and no children. The last is the case which we are to decide. What estate wras the widow to take? As it appears to me, the whole in fee simple. There is no mention of heirs or collateral relations. Why then should we insert them ? If the widow is not to take in the manner I have mentioned, how much is she to take and for what estate? If less than a fee simple, it must be for life. But what would a life estate have been worth in a wilderness, in the year 1786 ? What object could be more disconsolate, more worthy of support and comfort, than the childless widow of a soldier slain in battle, or dying in service? Where the soldier was alive, the reward of his services was due to himself. But if dead, it was most reasonable to bestow it on the objects of his dearest affections, his widow and his children or either of them. The case before us falls directly within the words of the law, and as directly within the spirit of it. I am therefore of opinion, that inasmuch as Charles Hoffman left no children, his widow took the land in trust for herself solely in fee simple.
Yeates J. and Brackenbxd&e J. expressed their concurrence.
Judgment affirmed.
[Cited in 4 W. 328.]